# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

ATTORNEY FOR PLAINTIFF:
Edward E. Kopko, Esq.
NDNY Bar Roll No. 510874
Edward E. Kopko, Lawyer, P.C.
308 North Tioga St., Second Floor
Ithaca, New York 14850
607.269.1300; 607.269.1301 fax
office@kopko.law

| | |
|---|---|
| RONALD M. GEORGIA<br><br>                    Plaintiff,<br><br>vs.<br><br><br>KYLE DAVENPORT,<br>Defendant | Docket No. 3:21-cv-484 (FJS/ML)<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff, by and through his attorney, Edward E. Kopko, Lawyer, P.C., complains against Defendant and requests trial by jury as follows:

### INTRODUCTION

1. Plaintiff Ronald Georgia (Georgia) brings this Section 1983 action for monetary damages and injunctive relief against defendant Kyle Davenport (Davenport), a Tompkins County deputy Sheriff. Georgia seeks redress for violations of civil rights secured to him by, but not limited to, the 4th and 14th amendments to the United States Constitution, in the form of general damages and punitive damages against Davenport in his individual capacity, together with costs, disbursements and attorney fees. Specifically, Georgia alleges false arrest, excessive force, and false imprisonment.

2.   On June 1, 2019, Davenport walked onto Georgia's home property allegedly investigating an unfounded complaint of loud music, knowing full-well that no municipal ordinance prohibited loud music.

3.   As soon as Georgia saw Davenport, he ordered Davenport to leave his property, yet Davenport entered and remained on Georgia's property without a warrant and without probable cause.

4.   Despite lacking any authority or probable cause and being ordered by Georgia to leave his property, Davenport viciously beat and dragged Georgia down his driveway.

5.   Davenport tried to cover his illegal behavior by falsely charging Georgia with crimes, all of which were dismissed.

6.   The episode was captured by police body cameras and the video demonstrates that Georgia posed no threat to Davenport and justifiably opposes Davenport's illegal activities.

7.   Davenport forcefully shoved Georgia back and proceeded to charge at him and shove him a second time. The second shove pushed Georgia approximately 6 feet back into his BBQ grill and onto the ground. Davenport then turned him onto his stomach and threatened to pepper spray him if he did not "shut the f*** up".

8.   Davenport placed handcuffs on Georgia so tightly as to cause swelling and bruising.

9.  Georgia was aggressively shoved approximately 6 feet back at a time when Georgia posed no threat, was not resisting arrest, or trying to flee.

10. The following pictures depict some of the injuries that Georgia sustained to his right arm, right wrist, and right knee:

  

11. Davenport maliciously and baselessly caused Georgia to be prosecuted with the charge of Obstruction of Governmental Administration and Resisting Arrest, charges that were all dismissed.

12. Davenport caused the preparation and publication of a press release by the Tompkins County Sheriff that defamed Georgia by falsely accusing him of crimes. (See, Exhibit 1)

## JURISDICTION

13. Georgia's claims against Defendants are predicated upon 42 U.S.C. § 1983, relating to deprivation of rights and 28 U.S.C.A. §§ 1331 and 1343(a)(3).

## VENUE

14. All of the acts complained of in this complaint occurred in Tompkins County, a county within the Northern District of New York.

## IDENTITY OF THE PARTIES

15. Georgia is a citizen of the United States and a resident of the State of New York, and County of Tompkins.

16. Davenport is a citizen of the United States and a resident of the State of New York and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant Tompkins County.

17. At all relevant times Davenport was acting in the course and general scope of his employment by Tompkins County Sheriff Department pursuant to the authority given to him by Tompkins County and pursuant to its instructions and duty assignments.

18. By virtue of Davenport's appointment and employment as a police officer with the Tompkins County Sheriff Department, Davenport is a "police officer" as that term is defined in CPL § 1.20(34) (d).

19. As a police officer, Davenport, when seizing, arresting, and acting with excessive force against Georgia, acted under color of law by using the authority vested in him by virtue of his appointment and by using the arrest procedures, appearance ticket procedures, and preliminary arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

20. Davenport is sued in his individual capacity.

## STATEMENT OF FACTS

21. On June 1, 2019, at approximately 11:33 p.m., Davenport was dispatched to 791 Van Ostrand Road in the Town of Lansing ("the residence"), for a noise complaint.

22. The Town of Lansing has no ordinance regulating noise within the Town, and Davenport lacked any authority to enter and remain upon Georgia's property.

23. Davenport recorded the incident on his body camera, although the body camera recording may be incomplete.

24. The recording was delivered by the prosecutor in connection with discovery in the underlying criminal case against Georgia on a CD. The file containing the footage is labeled "AXON_Body_2_Video_2019-06-01_2327." See, Exhibit 2.

**DAVENPORT BODY CAM VIDEO**

25. Davenport parked his cruiser on the road and approached the residence on foot by himself.

26. Music can be heard playing in the distance as Davenport approaches the residence.

27. As Davenport approaches the residence Davenport says, "What's going on boss?" as to which Georgia immediately states "Get the f*** off my property."

28. Georgia repeatedly demands that Davenport get off his property and Davenport continues to ask him to turn down the music.

29. Davenport lacked any authority to remain on Georgia's property after being ordered off the property by Georgia.

30. About forty-five seconds into the confrontation, Davenport is heard saying "No, I'm not playing this F***ing game, put your hands behind your f***ing back." And attempts to grab Georgia's arm when Georgia backs up and says, "wait a minute…".

31. In response, Davenport says "No, no, no, no, I'm not playing this f***ing game." Georgia says, "because I'm sitting on my patio…"  Davenport responds "No, because you're being an ass right now." And proceeds to grab Georgia's right wrist.

**FALSE ARREST**

32. Davenport says to Georgia "Do you want to get arrested, or do you want to turn your music down?"

33. Georgia continues to insist that he will do whatever he wants on his property.

34. Davenport states that he will call his sergeant over and begins dialing James Vann, as seen on his cell phone in the video.

35. As Davenport is placing the phone call, Georgia is telling Davenport to get off his property and out of his driveway. Davenport responds, "I'll be right back."

**EXCESSIVE FORCE**

36. Georgia repeats "get the f*** out of my driveway." to which Davenport responds "I'm not playing this game, back the f*** up dude" while shoving Georgia back.

37. Then, immediately, Davenport runs at Georgia and shoves him again, knocking Georgia to the ground, while very angrily yelling at Georgia "You need to back the f*** up, alright? I am sick of this f***ing game right now. You need to shut the f*** up!"

38. Davenport proceeds to sit on top of Georgia, held his head down to the ground and threatened pepper spray if Georgia didn't "shut the f*** up" and put his hands behind his back.

39. Georgia is then handcuffed and Davenport takes a call from James Vann.

40. Georgia continues to assert that this is his property and requests for the handcuffs to be taken off.   Davenport states "No, because you're being aggressive."

41. James Vann arrives, proceeds down the driveway on foot, and assists in dragging Georgia down the driveway to the police car.

42. On the way down the driveway Georgia asks "what are you arresting me for?" to which Davenport responds "obstructing governmental administration…because you weren't listening to what I was trying to tell you."

43. Davenport frisks Georgia but finds nothing illegal on him.

44. Davenport drives Georgia to the police station and takes him inside. Georgia is asking "did you arrest me?" Davenport says, "Yes I did." Georgia asks, "Did you read me my rights?" and Davenport responds "No, I didn't."

45. Davenport takes Georgia into the back of the station and he is handcuffed to a bench.

46. Georgia is fingerprinted and then transported to the hospital to have his injuries treated.

**DAVENPORT'S STATEMENTS CONTRADICTED BY VIDEO EVIDENCE**

47. There are specific statements in Davenport's Supplemental Report that are directly contradicted by the video evidence.

48. For example, Davenport states: "I observed that GEORGIA was highly intoxicated, and he also had his fists clenched, while posturing himself in a threatening manner."

49. There is no video evidence that Georgia had clenched fists or was posturing himself in a threatening manner.

50. Davenport states "Georgia again had his fists clenched and got only inches away from me. Thinking that Georgia may attempt to attack me, I put my phone back in my pocket and I pushed Georgia away from me, which he then fell to the ground."

51. Davenport did not feel imminently threatened by Georgia as evidenced by his statement that he first put his phone back in his pocket before pushing Georgia away.

52. There is no video evidence showing that Georgia had his fists clenched and got only inches away.

53. In fact, the video evidence clearly shows Georgia with his hands out saying, "get the f*** out of my driveway." Then, Davenport shoves him once, backing Georgia up about 4 feet from Davenport and then Davenport charges at Georgia, shoving him again and knocking him down to the ground.

54. Davenport states: "I then un-holstered my department issued OC spray, and informed GEORGIA that if he did not provide me with his hands then he

would be sprayed."

55. There is no video evidence to support that statement.

56. In fact, the video evidence shows Davenport un-holstering his pepper spray and saying, "I'm going to pepper spray you if you don't shut the f*** up".

**INJURIES TO GEORGIA**

57. On June 2, 2019, Georgia was transported to CMC by the police to seek emergency medical attention for his injuries and was diagnosed with:

CONTUSION OF RIGHT WRIST, INITIAL ENCOUNTER (06/02/19)
CONTUSION OF LEFT WRIST, INITIAL ENCOUNTER (06/02/19)
ABRASION OF RIGHT WRIST, INITIAL ENCOUNTER (06/02/19)
ABRASION OF LEFT WRIST, INITIAL ENCOUNTER (06/02/19)
CONTUSION OF RIGHT LOWER LEG, INITIAL ENCOUNTER (06/02/19)
CONTUSION OF LEFT LOWER LEG, INITIAL ENCOUNTER (06/02/19)
ABRASION, RIGHT LOWER LEG, INITIAL ENCOUNTER (06/02/19)
ABRASION, LEFT LOWER LEG, INITIAL ENCOUNTER (06/02/19)

58. Georgia suffered multiple lacerations and contusions on his body as a result of Davenport's actions.

59. On June 5, 2019, Georgia presented to CMC with chest pain, knee pain, and hip pain as a result of the injuries sustained on June 1, 2019.

```
Diagnostic Chest Exam
   Reason for Exam
     Chest Pain                                      Yes: right rib pain ,was
                                                     tackled by police,right
                                                     lateral rib pain

Chest Exam History
   History
     Hx Asthma                                       No
     Hx Chronic Obstructive Pulmonary Disease        No
      (COPD)
Diagnostic Pelvis/Extremity Exam
   Reason for Exam
     Pain                                            Yes: right hip ,right knee,
                                                     left hand
     Trauma                                          Yes: right hip and knee pain,
                                                     left hand after altercations
```

60. Davenport acted maliciously and wantonly, with the intent to injure Georgia, in committing the acts described in this complaint, warranting the imposition of punitive damages.

61. On November 20, 2019, after reviewing all relevant video and reports, upon application of the Tompkins County District Attorney, all charges related to this incident against Georgia were Ordered Dismissed with prejudice and sealed by the Town of Lansing Court.  See, Exhibit 3.

## COUNT ONE
## GEORGIA v. DAVENPORT
## 42 U.S.C. § 1983 – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

62. All of the allegations of the complaint are incorporated.

63. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

64. Georgia has a clearly established right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

65. Georgia also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

66. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

67. A police officer's application of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable `in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Graham*, 490 U.S. 386, 397 (1989)).

68. Davenport's actions and use of force were objectively unreasonable in light of the facts and circumstances confronting him and violated Georgia's Fourth Amendment rights.

69. Davenport's actions and use of force were also malicious and/or involved reckless, callous, and deliberate indifference to Georgia's federally protected

rights.   The force used by Davenport shocked the conscience and violated Georgia's Fourteenth Amendment rights.

70. Davenport unlawfully seized Georgia by means of objectively unreasonable, excessive and conscious-shocking physical force, thereby unreasonably restraining Georgia of his freedom.

71. Davenport's use of physical force against Georgia was objectively unreasonably gratuitous, and excessive in light of the facts and circumstances confronting Davenport in that:

    i.    Georgia had a right under New York law to resist Davenport's illegal use of force.

    ii.    Georgia had a legitimate reason to inquire whether he was being detained and whether he was free to leave;

    iii.    Georgia never engaged in criminal behavior in the presence of Davenport;

    iv.    Davenport exacerbated the facts and circumstances by charging at Georgia and shoving him on the ground a second time, when he posed no threat to Davenport whatsoever;

    v.    Davenport had no authority to arrest Georgia; and

    vi.    Georgia made no attempt to flee.

72. The force used caused serious bodily injury and permanent mental injury to Georgia.

73. As a proximate result of Davenport's unlawful conduct, Georgia has suffered actual physical and emotional injuries, and other damages and losses as described in this Complaint entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of Davenport's unlawful conduct, Georgia has incurred special damages, including medical related expenses and may continue to incur further medical and other special damages, in amounts to be established at trial.

74. Upon information and belief, Georgia suffered financial loss as a result of his injuries and had to take time off from work to recover.

75. Georgia is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

76. In addition to compensatory, economic, consequential, and special damages, Georgia is entitled to punitive damages against Davenport under 42 U.S.C. § 1983, in that the actions of Davenport were taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of Georgia.

**COUNT TWO**
**GEORGIA v. DAVENPORT**
**42 U.S.C. § 1983 – MALICIOUS PROSECUTION IN VIOLATION OF THE**
**FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

77. All of the allegations of this Complaint are incorporated.

78. At the time of the complained of events, Georgia had a clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

79. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

80. Davenport violated Georgia's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process when filed false charges against him, resulting in his unlawful confinement and prosecution.

81. Davenport conspired to institute, procure, and continue a criminal proceeding for Obstructing Governmental Administration (OGA) and Resisting Arrest against Georgia without probable cause.

82. The criminal proceedings terminated in Georgia's favor.

83. As a proximate result of Davenport's unlawful conduct, Georgia has suffered actual physical and emotional injuries, and other damages and losses as described in this Complaint entitling him to compensatory and special damages, in amounts to be determined at trial.

84. Georgia is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

85. In addition to compensatory, economic, consequential, and economic damages, Georgia is entitled to punitive damages against Davenport under 42 U.S.C. § 1983, in that the actions of Davenport were taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of Georgia.

**COUNT THREE**
**GEORGIA v. DAVENPORT**
**42 U.S.C. § 1983 – FALSE ARREST AND IMPRISONMENT IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

86. All of the allegations are incorporated.

87. Davenport intentionally arrested and confined Georgia without his consent and without justification and without probable cause.

88. Davenport had no authority to enter Georgia's property or to remain on Georgia's property after being ordered by Georgia to leave.

89. Davenport lacked probable cause to arrest Georgia for obstructing governmental administration because a person may not be legally arrested for obstructing governmental administration or interfering with an officer in the performance of an official function unless it is established that the police officer was engaged in authorized conduct. *People v. Vogel*, 116 Misc. 2nd 332; *People v. Simon*, 145 Misc. 2nd 518; *People v. Stump*, 129 Misc. 2nd 703.

90. Davenport was not authorized to attempt to detain Georgia because Davenport did not possess a reasonable suspicion that Georgia was involved in criminal activity because the town of Lansing did not have an ordinance governing noise.

91. Davenport lacked probable cause to arrest Georgia because he was free to walk away and resist on his own property and any attempt to detain him by Davenport was unauthorized.

92. Davenport lacked probable cause to arrest Georgia for resisting arrest because Davenport's arrest of Georgia was illegal, and Georgia had a right to resist an illegal arrest.

93. As a proximate result of Davenport's unlawful conduct, Georgia has suffered actual physical and emotional injuries, and other damages and losses as described in this Complaint entitling him to compensatory and special damages, in amounts to be determined at trial.

94. Georgia is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

95. In addition to compensatory, economic, consequential, and economic damages, Georgia is entitled to punitive damages against Davenport under 42 U.S.C. § 1983, in that the actions of Davenport were taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of Georgia.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Ronald Georgia, prays that this Court enter judgment for Plaintiff and the Defendant, Kyle Davenport, and grant:

A. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. Economic losses on all claims allowed by law;

C. Special damages in an amount to be determined at trial;

D. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

E. A permanent injunction against Davenport from engaging in unlawful searches, detentions, arrests, and prosecutions;

F. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

G. Pre- and post-judgment interest at the lawful rate; and

H. Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Edward E. Kopko, Esq.
NDNY Bar Roll No. 510874
Edward E. Kopko, Lawyer, P.C.
Attorney for Plaintiff, Ronald Georgia
308 N. Tioga St., 2nd Floor
Ithaca, NY 14850
T: 607.269.1301; F: 607.269.1301
ekopko@kopko.law

Listen Live



EXHIBIT 1

 MENU

Home Ê News Ê Story

NEWS

# Lansing man arrested for loud music disturbance

2 YEARS AGO IN LOCAL



PHOTO: WHCU/PHOTO: T.C. SHERIFF'S WEBSITE

***(press release from the Tompkins County SheriffÕs Dept.)***

Ithaca NY (WHCU) Ð On June 1st, 2019 at 11:01 PM, Tompkins County SheriffÕs Deputies responded to 791 Van Ostrand Road, Town of Lansing for a noise complaint.

Deputies were called after nearby residents reported that their neighbor had threatened them after they went over and asked him to turn his music down.  Deputies found that the music was extremely loud upon arrival and spoke with the resident, Ronald M. Georgia, age 61 in an attempt to mediate the

Georgia was charged with Obstructing Governmental Administration in the Second Degree (Class A Misdemeanor) and Resisting Arrest (Class A Misdemeanor).

He was released on appearance tickets ordering his return to the Town of Lansing Court on June 20th, 2019 and was transported to Cayuga Medical Center due to his intoxication level.

TAGS

STORY © 2019 WHCU · IMAGES © 2019 WHCU

**870 AM 97.7FM News Talk WHCU**

Copyright 2021 Saga Communications, Inc.

All rights reserved.

EEO Report | FCC Public File | FCC Applications

For assistance accessing public files, contact pfhelp@cyradiogroup.com

Privacy Policy | Terms of Use | Contests & Rules | Some images copyright AP, Clipart.com

Non-Discriminatory Advertising Letter | Advisory Public Notice - Non-Discriminatory Ad Contracts

EXHIBIT 2

AXON_Body_2_Video_2019-06-01_2327

(hard copy provided to court by mail)

**Lansing Town Court**
**29 Auburn Road, PO Box 186**
**Lansing, New York 14882**

# EXHIBIT 3

John C Howell
Town Justice

(607) 533-4776
(607) 533-3667

November 20, 2019

## 160.50 SEAL ORDER

**To:**
Tompkins County Sheriff's Dept
779 Warren Road
Ithaca, NY 14850

**Return Records To:**
Lansing Town Court
29 Auburn Road, PO Box 186
Lansing, New York 14882

*People of the State of New York versus:*
Ronald M. Georgia

███████████████████████

| Re. Case No. | Statute/Section | Description | Ticket# | Disposition |
|---|---|---|---|---|
| Sealed | | | | |
| Sealed | | | | |

Date of Birth: ████████████        JC501 no: 69035037K
Date of Arrest: 06/01/2019          NYSID no: 05583702Y
Date Adjudicated: 11/20/2019

The case captioned above was terminated in favor of the
defendant.

Pursuant to CPL 160.50 you are hereby ordered to follow all of
the steps outlined in the CPL 160.50 (1a, 1b and 1c) to seal and
return the appropriate records for the case cited above.

_____          11/20/19
Justice                          Date

21-November-2019

Local Court Criminal Disposition Report UCS-540-sei.
NY054111J - 345413Y John C Howell, Lansing Town Court

CPY 1:ml       CPY 2:        CPY 3:        CPY 4:

SERIAL:06260053
DEF LNAME/F /M:Georgia, Ronald M.          DOB: ▮▮▮▮▮▮   DOCKET #:19060015
501#: 69035037K   NYSID#: 05583702Y   ARST AGENCY ORI:NY0540000        ID:
AKA:                            ARST DT:06/01/19 ARN DT:06/27/19 C TYP:RE

| INT DIS DT 1: / / | CODE: | INT DIS DT 2: / / | CODE: |
| INT DIS DT 3: / / | CODE: | INT DIS DT 4: / / | CODE: |
| INT DIS DT 5: / / | CODE: | INT DIS DT 6: / / | CODE: |

DISPO COV CASE(S) IN: CT CD:          DKT:
                     CT CD:          DKT:

C01:PL -195.05    -N-001      DESC: -AM2- OBS GOVT ADMN 2
RED:    -         -      - -   DESC: -    -
DDT:11/20/19 DCODE:DIJ   ACD:  / / CDE:          DKT:          RC:
SDT:  / / SCODE:        CUST/TIME:        PROB:     DR L: T:
CST:    OPT:      SEAL STAT:Sealed 160.50
FINE:      STAT:      SURCHARGE:    STAT:      T:    CVAF:    STAT:

C02:PL -205.30    -N-001      DESC: -AM0- RESIST ARREST
RED:    -         -      - -   DESC: -    -
DDT:11/20/19 DCODE:DIJ   ACD:  / / CDE:          DKT:          RC:
SDT:  / / SCODE:        CUST/TIME:        PROB:     DR L: T:
CST:    OPT:      SEAL STAT:Sealed 160.50
FINE:      STAT:      SURCHARGE:    STAT:      T:    CVAF:    STAT:

REMARKS:

ATTORNEY: Edward Kopko
          308 North Tioga Street
          2nd Floor
          Ithaca, NY 14850

ORDERED BY: John C Howell
     DATE: 11/21/2019

AUTHORIZED SIGNATURE: _____          Page 1 of 1