UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD M. GEORGIA,

                          Plaintiff,

                                                3:21-CV-0484
v.                                            (ML)

KYLE DAVENPORT,

                          Defendant.
_____

APPEARANCES:                         OF COUNSEL:

OFFICE OF EDWARD E. KOPKO          EDWARD E. KOPKO, ESQ.
  Counsel for Plaintiff
308 North Tioga Street, 2nd Floor
Ithaca, New York 14850

TOMPKINS COUNTY ATTORNEY'S OFFICE    HOLLY MOSHER, ESQ.
  Counsel for Defendant
125 East Court Street
Ithaca, New York 14850

**MEMORANDUM-DECISION and ORDER**

MIROSLAV LOVRIC, United States Magistrate Judge

## I.    INTRODUCTION

      Plaintiff Ronald M. Georgia ("Plaintiff") commenced this civil rights action on April 27,

2021, alleging that Defendant Kyle Davenport ("Defendant") violated his civil rights during an

interaction that began on June 1, 2019.  (*See* Dkt. No. 1.)  Following the close of discovery, the

Court held a three-day bench trial on April 19, 2023, April 21, 2023, and April 24, 2023.[1]  (Dkt. Nos. 60, 61; Text Minute Entry dated 4/24/2023.)

At trial, the pending claims were (1) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) false arrest in violation of the Fourth Amendment and 42 U.S.C. § 1983; and (3) malicious prosecution in violation of the Fourth Amendment and 42 U.S.C. § 1983.  (Dkt. No. 1.)

The parties submitted post-trial briefs.  (Dkt. Nos. 64, 67, 68.)  Having reviewed the parties' pre-trial submissions, the testimony and evidence submitted during trial, the trial transcript and exhibits, and the parties' post-trial briefs, the following are the Court's findings of fact and conclusions of law made pursuant to Rule 52 of the Federal Rules of Civil Procedure:

## II.    FINDINGS OF FACT

Virtually all of the pertinent interactions between Plaintiff and Defendant were videotaped and were introduced into evidence at trial.  In the Court's opinion, there cannot be any real dispute about the events at issue, as the Court can see and hear it in the video footage. Instead, the parties appear to dispute how the events that occurred should be interpreted.  The following is intended to summarize, not supplant, the video.

On June 1, 2019, at approximately 11:30 p.m., Defendant (a Tompkins County Sheriff's Deputy) responded to Plaintiff's residence—located at 791 Van Ostrand Road, Lansing, New York—after an individual at a nearby residence called 911 to report a noise complaint.  (Dkt. No. 60 at 6-7.)  The Town of Lansing has no noise ordinance regulating noise levels within the Town.  (Dkt. No. 53 at ¶ 5.)

---

[1]    This matter is before me on consent of the parties pursuant to 28 U.S.C. § 636(c) and Northern District of New York Local Rule 73.1.  (Dkt. No. 41.)  In addition, the parties stipulated to a bench trial pursuant to Fed. R. Civ. P. 39.  (Dkt. No. 53 at 1.)

Defendant parked his patrol car on the road and approached Plaintiff's residence. (Dkt. No. 60 at 6-7.) On the body cam video, music can be heard playing as Defendant approached Plaintiff's residence. (Exhibit P-14 at T03:27:21Z; Dkt. No. 60 at 13-14.) Plaintiff immediately directed Defendant to leave his property but Defendant did not leave and explicitly responded "no" to Plaintiff's command. (Exhibit P-14 at T03:28:02Z-T03:2815Z; Dkt. No. 60 at 14.)

Plaintiff informed Defendant that there is no noise ordinance in the Town of Lansing. (Exhibit P-14 at T03:28:19Z.) Defendant placed his hand on Plaintiff's chest and pushed Plaintiff back while directing Plaintiff to back up. (*Id*. at T03:28:21Z.) Plaintiff again directed Defendant to get off his property. (*Id*. at T03:28:23Z.) Defendant stated, "we're not playing this game" and directed Plaintiff to put his hands behind his back while grabbing for Plaintiff's hand. (*Id*. at T03:28:24Z-T03:28:30Z.) Plaintiff asked why and Defendant responded "because your music is fucking loud. I came here respectfully to talk to you okay? And then you're screaming at me telling me to get the fuck off your property." (*Id*. T03:28:30Z-T03:28:41Z.)

Plaintiff and Defendant continued conversing about (1) Plaintiff's request that Defendant leave the property and Defendant's refusal to leave, and (2) Defendant's direction that Plaintiff place his hands behind his back. (Exhibit P-14 at T03:28:41Z-T03:30:14Z.) Eventually, Plaintiff turned around with his hands behind his back, then he turned back around and said "wait a minute." (*Id*. at T03:30:15Z.) Defendant asked Plaintiff "what do you want to do, do you want to get arrested or do you want to turn your music down?" (*Id*. at T03:30:15Z-T03:30:24Z.) Plaintiff informed Defendant that Plaintiff would do whatever he wanted on his property. (*Id*. at T03:30:33Z.)

Plaintiff and Defendant continued conversing about Plaintiff's music.  (Exhibit P-14 T03:30:33Z-T03:31:46Z.)  The music stopped playing (*id*. at T03:31:46Z) but Defendant still directed Plaintiff to turn the music down (*id*. at T03:31:47Z).

Defendant—who later testified that he was confused about how to address the situation— stepped away from Plaintiff to call his supervising Sergeant.  (Exhibit P-14 at T03:32:04Z; Dkt. No. 60 at 47.)  Plaintiff directed Defendant to move to the street to make the phone call.  (Exhibit P-14 at T03:32:12Z.)  Defendant refused and pushed Plaintiff while shouting "back the fuck up dude."  (*Id*. at T03:32:26Z.)  Plaintiff moved backward as a result of Defendant's push.  (*Id*. at T03:32:27Z.)  Defendant moved towards Plaintiff—closing the space between them—while shouting "you need to back the fuck up."  (*Id*.)  Defendant pushed Plaintiff again, causing Plaintiff to fall backwards near a grill.  (*Id*. at T03:32:28Z.)

Defendant placed handcuffs on Plaintiff.  (Exhibit P-14 at T03:33:27Z-T03:34:05Z.) Plaintiff asked what he was arrested for and Defendant said "obstructing of governmental administration."  (*Id*. at T03:38:32Z-T03:38:36Z.)

Plaintiff was put in the back of Defendant's patrol vehicle.  (Exhibit P-14 at T03:39:40Z-T03:40:10Z.)  When Defendant began driving, Plaintiff again asked what the charges against him were.  (*Id*. at T03:42:52Z-T03:42:54Z.)  Defendant told Plaintiff he was charged with obstructing governmental administration and resisting arrest.  (*Id*. at T03:42:55Z-03:42:59Z.)

In the car on the drive to the station, Plaintiff asked for the handcuffs to be taken off because they were "really hurting" him.  (Exhibit P-14 at T03:48:42-T03:48:43Z.)

At the station, Defendant took one handcuff off Plaintiff and connected the other handcuff to a pair of handcuffs attached to the structure.  (Exhibit P-14 at T03:53:10-T03:53:25Z.)

Plaintiff was placed back in the patrol vehicle to be transported to the hospital and informed the police that the handcuffs needed to be loosed.  (Exhibit P-16 at T04:38:10Z.)  During the drive to the hospital, Plaintiff again complained that his arms were really hurting him.  (*Id*. at T04:41:29Z.)  Plaintiff directed Defendant to hurry up the drive because his wrists were bleeding.  (*Id*. at T04:42:10Z.)  A few minutes later, Plaintiff again stated that his wrists really hurt.  (*Id.* at T04:45:38Z.)  Defendant testified that Tompkins County policy requires him to check for the tightness of the handcuffs by putting his finger in between the jaw and the wrist but that he made no attempt to determine how tight the handcuffs were on Plaintiff.  (Dkt. No. 60 at 50-52.)

## III.    CONCLUSIONS OF LAW

### A.    Legal Standard

"In a bench trial such as this, it is the Court's job to weigh the evidence, assess credibility, and rule on the facts as they are presented."  *Bahrami v. Ketabchi*, 05-CV-3829, 2009 WL 513790, *9 (S.D.N.Y. Feb. 27, 2009) (quoting *Johnson-McClean Techs. v. Millennium Info. Tech. Grp.*, 02-CV-244, 2003 WL 192175, *8 (S.D.N.Y. Jan. 27, 2003) (internal quotation marks and alterations omitted)); *see also Mathie v. Fries*, 121 F.3d 808, 811-12 (2d Cir. 1997).  "The Court [is] 'in the best position to evaluate [each] witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.'"  *Bahrami*, 2009 WL 513790, at *9 (quoting *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996)); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (noting that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said").  If the "evidence is equally divided . . . 'the party with the burden of proof loses.'"  *Bahrami*, 2009 WL

513790, at *9 (quoting *United States v. Gigante*, 39 F.3d 42, 47 (2d Cir. 1994)); *see also Fulop v. Malev Hungarian Airlines*, 244 F. Supp. 2d 217, 223 (S.D.N.Y. 2003) (finding that "[t]he evidence on this issue is substantially divided and, in the Court's assessment, does not tilt sufficiently to Plaintiff's case to satisfy the preponderance standard").

B.   **ANALYSIS**

1.   **Liability**

a.   **Excessive Force**

"Excessive force claims related to an arrest or seizure are evaluated under the Fourth Amendment using an 'objective unreasonableness' standard." *Bogart v. City of New York*, 13-CV-1017, 2016 WL 4939075, *7 (S.D.N.Y. Sept. 6, 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  Because the force used in the present matter occurred during Plaintiff's arrest, his claims are properly analyzed under the reasonableness standard set forth in *Graham*.  *See Francis v. Vill. of Potsdam*, 20-CV-1097, 2023 WL 2655677, *3 (N.D.N.Y. Mar. 27, 2023) (D'Agostino, J.).

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).

The reasonableness determination must include consideration of the fact that law enforcement officers often are forced to make quick decisions under stressful and rapidly evolving circumstances rendering the calculation of what amount of force is reasonable difficult. *See Graham*, 490 U.S. at 396-97.  Relevant factors include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether

the suspect was actively resisting arrest. *See Brown*, 798 F.3d at 100 (citing *Graham*, 490 U.S. at 396). As to the third factor, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) (emphasis in original). Further, "'reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury.'" *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 180 (E.D.N.Y. 2002) (quoting *Gonzalez v. City of New York*, 98-CV-3084, 2000 WL 516682, *4 (E.D.N.Y. Mar. 7, 2000)), *aff'd*, 59 F. App'x 409 (2d Cir. 2003). Moreover, to support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force. *See Feliciano v. Thomann*, 747 F. App'x 885, 887 (2d Cir. 2019). Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were *de minimis*. *See Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004).

As to the first factor under *Graham*—the severity of the crimes at issue—favors Plaintiff. The crimes that Plaintiff was charged with after the incident on June 1, 2019, were resisting arrest and obstruction of governmental administration, which are merely Class A Misdemeanors.[2] "Misdemeanors are considered non-serious crimes for purposes of the *Graham* analysis." *DeGroat v. Buck*, 22-CV-0507, 22-CV-0516, 2023 WL 4763806, at *6 (N.D.N.Y. July 26, 2023) (Kahn, J.) (citing *Ketcham v. City of Mount Vernan*, 992 F.3d 144, 150 (2d Cir.

---

[2]    In addition, Plaintiff was later charged with disorderly conduct. "[T]he severity of the crime [of disorderly conduct] is unquestionably slight" for purposes of the *Graham* analysis. *Brown*, 798 F.3d at 102.

2021) (finding that the first *Graham* factor favored the plaintiff because "the offense was a misdemeanor"); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015) ("Obstruction of Governmental Administration . . . and Resisting Arrest [] are not severe.")).

The second factor—whether Plaintiff posed an immediate threat to the safety of the officers or others—tips in favor of Plaintiff. The Court finds that the video footage capturing the incident indicates that Plaintiff did not pose an immediate threat to the safety of Defendant or others. Instead, as summarized above Defendant pushed Plaintiff away after apparently believing that Plaintiff was too close to him. Defendant then closed the space between he and Plaintiff and pushed Plaintiff again, this time causing Plaintiff to fall backwards onto the ground and sustain physical injuries.

The third factor—whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight—weighs in favor of Plaintiff. "[R]esisting arrest can include passive resistance or non-compliance." *Harris v. Leon,* 20-CV-10864, 2023 WL 2051171, at *3 (S.D.N.Y. Feb. 16, 2023) (citing *Brown*, 798 F.3d at 103). Based on the Court's review of the video capturing the incident, Plaintiff did not attempt to flee. Although Plaintiff did not comply with Defendant's initial directions to place his hands behind his back, at the time that Defendant shoved Plaintiff, Defendant had not given Plaintiff any pertinent verbal orders or directions. Instead, Plaintiff was directing Defendant to make his phone call on the road and off Plaintiff's property. (Exhibit P-14 at T03:32:18Z.) Defendant states "I'll be right back." (*Id*. at T03:32:21Z.) Defendant then appeared to hang up the call he was attempting to make, said "Alright, I'm not playing this fucking--" Plaintiff interrupted with another direction to Defendant to get off his property, Defendant interrupted Plaintiff and said "no" then simultaneously shoved Plaintiff while shouting "back the fuck up dude." (*Id*. at T03:32:25Z.) Defendant then appeared to close the

space between he and Plaintiff, and simultaneously shoved Plaintiff again while shouting "you need to back the fuck up. Alright, I'm sick of this fucking game right now."  (*Id*. at T03:32:32Z.) Hence, although there had been prior orders that Plaintiff failed to comply with, when considered in context and in relation to when Defendant used the force, there were no verbal orders or directions that Plaintiff was non-compliant with or passively resisting.

Based on the facts established at trial, applying this standard poses little difficulty. Plaintiff was not implicated in *any* crime, posed little or no threat to the officer, and cannot reasonably be said to have resisted or fled.  In addition to the two shoves discussed above, Plaintiff repeatedly complained that his handcuffs were too tight and causing him pain. Notwithstanding Plaintiff's complaints, Defendant declined to loosen the handcuffs or follow Tompkins County policy by checking the tightness of the handcuffs.  As such, Plaintiff overwhelmingly established that Defendant used excessive force, not only in Defendant's excessive pushing of Plaintiff on Plaintiff's property, but also in the force used to subdue and restrain Plaintiff.  *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) ("In each of these cases, the question was whether the totality of the circumstances justified a particular sort of search or seizure.").

To the extent that Defendant invokes the doctrine of qualified immunity, that argument is unpersuasive.  While the right to be free from the use of excessive force under the Fourth Amendment is clearly established, the key question is whether a reasonable officer under the circumstances would believe that his conduct violated that clearly established right.  *Carr v. City of Norwich*, 17-CV-0954, 2019 WL 1332770, at *9 (N.D.N.Y. Mar. 1, 2019) (Peebles, M.J.), *report and recommendation adopted*, 2019 WL 1331910 (N.D.N.Y. Mar. 25, 2019) (Sharpe, J.).

Here, no reasonable officer would believe that the force employed by Defendant was reasonable.  Defendant assaulted, handcuffed, restrained, and confined a citizen who did nothing unlawful.  Defendant is not entitled to qualified immunity.  *Stratakos v. Nassau Cnty.*, 15-CV-7244, 2021 WL 2587722, at *8 (E.D.N.Y. June 24, 2021) (declining to apply qualified immunity where "the officers assaulted, handcuffed, restrained and confined a citizen whom, they are now forced to admit, did nothing unlawful.").

As a result, Plaintiff has established that Defendant used excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment.

### b.      False Arrest

Federal claims of false arrest implicate the Fourth Amendment right to be free from unreasonable seizures.  *See Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991).  A § 1983 claim alleging false arrest is "substantially the same" as the tort under New York state law.  *Posr*, 944 F.2d at 96.  "To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'"  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Based on the facts established at trial, Plaintiff established each element of his false arrest claim.

However, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest."  *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted)).  "Probable cause exists when an officer has 'knowledge or reasonably trustworthy

information sufficient to warrant a person of reasonable caution in the belief that an offense has

been committed by the person to be arrested.'"  *Curley v. Vill. of Suffern*, 268 F.3d 65, 69-70 (2d

Cir. 2001) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (additional internal

quotation omitted)).  "Whether probable cause exists depends upon the reasonable conclusion to

be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v.

Alford*, 543 U.S. 146, 152 (2004); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting

*Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (emphasis in original)) ("'When

determining whether probable cause exists courts must consider those facts available to the

officer at the time of the arrest and immediately before it.'").

On June 2, 2019—based on the incident that occurred on June 1, 2019—Plaintiff was

charged with obstructing governmental administration in the second degree pursuant to N.Y.

Penal Law § 195.05 and resisting arrest pursuant to N.Y. Penal Law § 205.30.  (Exhibit P-10;

Exhibit P-12.)  On August 2, 2019, Plaintiff was charged—by prosecutor's information—with

disorderly conduct in violation of N.Y. Penal Law § 240.20(2).  (Exhibit P-8.)

All of the charges against Plaintiff were dismissed on November 19, 2019, after the

assigned assistant district attorney ("ADA") moved to dismiss the charge of disorderly conduct

against Plaintiff.  (Exhibit P-2.)  The ADA noted in his motion to dismiss that, based on his

review, the evidence was insufficient to prove the case beyond a reasonable doubt.  (*Id*.)

The Court finds that there was no probable cause to arrest Plaintiff.

### i.      Obstructing Governmental Administration

Section 195.05 of the New York Penal Law provides, in relevant part:

> A person is guilty of obstructing governmental administration when [she]
> intentionally obstructs, impairs or perverts the administration of law or
> other governmental function, or prevents or attempts to prevent a public
> servant from performing an official function, by means of intimidation,

physical force or interference, or by means of an independently unlawful
act.

N.Y. Penal Law § 195.05; *see Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995) ("[t]he elements
of obstructing governmental administration therefore include: (1) prevention or attempt to
prevent (2) a public servant from performing (3) an official function (4) by means of
intimidation, force or interference").  New York law makes clear that "the official function being
performed must be one that was 'authorized by law.'"  *Lennon v. Miller*, 666 F.3d at 424
(quoting *In re Verna C.*, 143 A.D.2d 94 (N.Y. App. Div. 2d Dep't 1988)).

    New York courts have repeatedly held that the word "physical" in the statute modifies the
words "force" *and* "interference."  *See Dowling v. City of New York*, 11-CV-4954, 2013 WL
5502867, *5 (E.D.N.Y. Sept. 30, 2013) (internal citations omitted); *see also Rasin v. City of New
York*, 14-CV-5771, 2016 WL 2596038, *5 (E.D.N.Y. May 4, 2016) ("[i]n addition to intent and
actual or attempted obstruction or impairment of a government function, a violation of the statute
requires physical interference"); *Trapp-Miley v. City of New York*, 09-CV-3933, 2012 WL
1068102, *6 (E.D.N.Y. Jan. 17, 2012) ("recent caselaw makes clear that some physical aspect to
the interference—albeit not necessarily physical *force*—must be present to constitute a violation
of section 195.05"), *report and recommendation adopted as modified*, 2012 WL 1068084
(E.D.N.Y. Mar. 29, 2012).  In other words, to constitute obstruction under the statute, the
interference must contain a physical component; "verbal interference" alone is insufficient.  *In re
Davan L.*, 91 N.Y.2d 88, 91 (N.Y. 1997); *see Hilderbrandt v. City of New York*, 13-CV-1955,
2014 WL 4536736, *4 (E.D.N.Y. Sept. 11, 2014) ("words alone, even abusive ones, cannot give
rise to probable cause to arrest for obstructing governmental administration as a matter of law")
(internal citations omitted); *Dowling v. City of New York*, 2013 WL 5502867 at *4 ("[f]ailing to
obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable

cause for an arrest for obstructing government administration"); *Richardson v. N.Y.C. Health & Hosps. Corp.*, 05-CV-6278, 2009 WL 804096, *9 (S.D.N.Y. Mar. 25, 2009).

"The physicality requirement need not be met by physical *force*, but must be in part, at least, physical in nature." *Rasin v. City of New York*, 2016 WL 2596038 at *5 (internal quotations omitted).  Circumstances involving a verbal communication that has "an interfering effect combined with unwarranted physical intrusion into an area of police activity" may amount to physical interference within the meaning of the statute. *Hilderbrandt v. City of New York*, 2014 WL 4536736 at *5.  Accordingly, "[i]nterrelated conduct—actions coupled with words or conduct causing some 'physical reaction and dispersal'—is actionable." *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 265 (E.D.N.Y. 2014).

The record establishes that Defendant was not engaged in authorized official duties when he encountered Plaintiff.  The parties agree that the Town of Lansing, where the relevant incident took place, does not have a noise ordinance.  (Dkt. No. 60 at 78:10-13.)  Defendant acknowledged that Plaintiff ordered him off the property multiple times.  (*Id.* at 78:14-17.)  However, Defendant did not leave Plaintiff's property at Plaintiff's request.  Moreover, once the music stopped, Defendant did not leave Plaintiff's property.  (Dkt. No. 60 at 64-65.)

The Information charging Plaintiff with obstructing governmental administration alleged that Plaintiff "intentionally disobeyed [Defendant]'s commands to back away, as [Plaintiff] was only inches away from [Defendant], screaming obscenities and acting in an aggressive manner." (Exhibit P-10.)  Plaintiff's words alone were not enough to constitute the crime of obstructing government administration.  Moreover, as set forth above, the video shows Defendant's commands to "back away" being made simultaneous to Defendant shoving Plaintiff.  Hence, Plaintiff was not given a reasonable opportunity to comply with Defendant's commands.

Further, as discussed below in Part III.B.1.b.ii. of this Memorandum, Decision and Order, Defendant was not engaged in a legal arrest of Plaintiff and thus, no charge for obstructing governmental administration will lie. *United States v. Olavarria*, 08-CR-0870, 2011 WL 1529190, at *7 (S.D.N.Y. Apr. 20, 2011) (citations omitted) ("Where the police are engaged in an illegal arrest, other unlawful seizure, or an unlawful search, no charge for obstruction of governmental administration will lie.").

### ii.     Resisting Arrest

Section 205.30 of the New York Penal Law provides that "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30. Thus, the statute explicitly requires that an officer be "effecting an authorized arrest"; an unauthorized arrest will bar a charge of resisting arrest. *People v. Jensen*, 86 N.Y.2d 248, 253 (1995) ("[a] key element of resisting arrest is the existence of an authorized arrest, including a finding that the arrest was premised on probable cause"); *see Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) ("[t]here are thus at least two essential elements of a charge for resisting arrest under New York law: (1) the person charged must have intentionally attempted to prevent the arrest of [her]self or someone else, and (2) the arrest [s]he attempted to prevent must itself have been supported by a warrant or by probable cause").

"This Court's determination that [Defendant] lacked probable cause to arrest [Plaintiff] for obstruction of governmental administration compels the determination that [D]efendant[] likewise lacked probable cause to arrest [Plaintiff] for resisting arrest." *McKnight v. Vasile*, 11-CV-6328, 2017 WL 1176051, at *20 (W.D.N.Y. Mar. 30, 2017) (citing *Curry v. City of Syracuse*, 316 F.3d at 336 (second element of resisting arrest requires the arresting officer to

have cause to arrest individual for some independent crime at the time individual resists); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 290 (S.D.N.Y. 2001) ("because the officer had no probable cause to arrest plaintiff, he likewise lacked probable cause for the charge of resisting arrest")).

### iii.    Other Potential Charges

Although the position of Defendant with respect to Plaintiff's claims is far from clear (Dkt. No. 67 [Def.'s Closing Argument which summarizes Defendant's perspective of the facts and sets forth a bullet point list of eleven cases]), "the Court must look to whether probable cause existed to arrest Plaintiff for *any* crime, irrespective of the crimes with which []he was ultimately charged." *Richardson v. New York City Health and Hosp. Corp.*, 05-CV-2009 WL 804096, at *8 (S.D.N.Y. Mar. 25, 2009).

The only other crime that appears conceivable given the circumstances is disorderly conduct pursuant to N.Y. Penal Law § 240.20(2), which prohibits the making of "unreasonable noise" with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.   A "finding that [the person]'s disruptive statements and behavior were of a public rather than an individual dimension" is "critical to a charge of disorderly conduct." *People v. Baker*, 984 N.E.2d 902, 905 (N.Y. 2013) ("This requirement stems from the mens rea component, which requires proof of an intent to threaten public safety, peace or order (or the reckless creation of such a risk)."); *see People v. Munafo*, 50 N.Y.2d 326, 331 (N.Y. 1980) (holding that the disorderly conduct statute is violated only in "situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem.").

Defendant testified that he knew he could not arrest Plaintiff for disorderly conduct unless someone other than Defendant himself complained about Plaintiff's music.  (Dkt. No. 60 at 36-37.)  Defendant testified that no one else was at the scene of the incident and before going to Plaintiff's residence, he did not contact the complainant who had called 911.  (*Id*. at 7, 31-32, 36-37.)  It was not until June 3, 2019, that Plaintiff's neighbor—Ricky Gonzales—provided a supporting deposition regarding the volume of Plaintiff's music on June 1, 2019.  (Exhibit P-11.)

Moreover, Defendant failed to present evidence or allegations "establishing the proximity of [Plaintiff's music] to neighbors or other members of the public such that [Plaintiff's] actions could support a logical inference that [he] acted with intent or recklessness in regard to members of the public."  *Sharon D. v. Dara K*., 13 N.Y.S.3d 656, 659 (N.Y. App. Div. 3d Dep't 2015) (finding that an altercation between a mother and grandmother in the confines of a great-aunt's home did not illustrate the requisite mens rea for purposes of N.Y. Penal Law § 240.20); *see Grant v. City of Syracuse*, 15-CV-0445, 2017 WL 5564605, at *6 (N.D.N.Y. Nov. 17, 2017) (Kahn, J.) (finding that accusations that an individual, in his own home, violently flailed his arms at his adult daughter and slammed open his front door failed to support a logical inference that he acted with intent or reckless in regard to members of the public); *Kirsten G. v. Melvin G. Sr.*, 39 N.Y.S.3d 460, 462 (N.Y. App. Div. 1st Dep't 2016) (holding that "ranting and raging" outside of an apartment door does not constitute disorderly conduct because no evidence was presented regarding the proximity of neighbors or other members of the public, or that the individual's conduct could have caused public alarm).  Thus, Defendant failed to establish the defense that at the time of Plaintiff's arrest, there was probable cause to charge Plaintiff with disorderly conduct pursuant to N.Y. Penal Law § 240.20(2).

As a result, I find that Plaintiff proved by a preponderance of the evidence that on June 1,

2019, Defendant falsely arrested Plaintiff in violation of the Fourth Amendment of the United

States Constitution.

### iv.    Qualified Immunity

To the extent that Defendant asserts that even if probable cause was lacking, he is

nevertheless entitled to judgment based on the doctrine of qualified immunity, the Court

disagrees.

Even if there was not probable cause to arrest the plaintiff, the defense of qualified

immunity entitles public officials to freedom from suit, as a result of the consequences of the

performance of their discretionary duties, when "(1) their conduct does not violate clearly

established constitutional rights, or (2) it was objectively reasonable for them to believe their acts

did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000)

(quoting *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996)).  Qualified immunity is an

affirmative defense, and, as such, defendants bear the burden of proving that the privilege of

qualified immunity applies.  *Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).  In

considering a qualified immunity defense, courts should not be "concerned with the correctness

of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of

action given the circumstances confronting them at the scene."  *Martinez*, 202 F.3d at 634

(quoting *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)).

"[I]n the context of a qualified immunity defense to an allegation of false arrest, the

defending officer need only show 'arguable' probable cause."  *Martinez*, 202 F.3d at 634 (citing

*Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1987)).  "An officer's determination is objectively

reasonable"—and thus, arguable probable cause is demonstrated—when "officers of reasonable

competence could disagree on whether the probable cause test was met." *Jenkins*, 478 F.3d at 87

(quoting *Lennon*, 66 F.3d at 423-24).  As the Second Circuit explained in *Jenkins*, "'[a]rguable'

probable cause should not be misunderstood to mean 'almost' probable cause. . . .  If officers of

reasonable competence would have to agree that the information possessed by the officer at the

time of the arrest did not add up to probable cause, the fact that it came close does not immunize

the officer." *Id*.

"Arguable probable cause exists when a 'reasonable police officer in the same

circumstances and possessing the same knowledge as the officer in question *could* have

reasonably believed that probable cause existed in the light of well established law.'" *Cerrone v.*

*Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.

1997)).  Thus, "[a]lthough the tests for probable cause and arguable probable cause are . . . not

congruent, . . . the concept of probable cause is the same in both inquiries." *Zellner v.*

*Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (internal citation omitted).  Accordingly,

"[a]rguable probable cause must not be misunderstood to mean 'almost probable cause.'"

*Zellner*, 494 F.3d at 370 (quoting *Jenkins v. City of New York*, 478 F.3d at 87).  The relevant

inquiry is "whether it was objectively reasonable for the officer to conclude that probable cause

existed"; "[i]f officers of reasonable competence would have to agree that the information

possessed by the officer at the time of the arrest did not add up to probable cause, the fact that it

came close does not immunize the officer." *Id.* (quoting *Jenkins*, 478 F.3d at 87) (emphasis

omitted).

Here, as outlined above, at the time of Plaintiff's arrest, "officers of reasonable

competence would have to agree that the information possessed by [Defendant] at the time of the

arrest did not add up to probable cause," and he is therefore not entitled to qualified immunity. *Zellner*, 494 F.3d at 370 (citing *Jenkins*, 478 at 87).

More specifically, the allegations accusing Plaintiff of obstructing governmental administration are incongruent with the video of the interaction between Plaintiff and Defendant, which revealed Defendant directing Plaintiff to "back the fuck up" two times while Defendant simultaneously pushed Plaintiff. (Exhibit P-14 at T03:32:25Z, T03:32:32Z.) As set forth above, there was no reasonable opportunity for Plaintiff to comply with Defendant's directions. Moreover, Plaintiff's words alone were insufficient to establish probable cause that Plaintiff committed the crime of obstructing governmental administration.

Because there was no probable cause to arrest Plaintiff for obstructing governmental administration, it was not a lawful arrest and there was also no arguable probable cause to arrest Plaintiff for resisting arrest. Moreover, as set forth above, Defendant failed to present evidence indicating that there was arguable probable cause to charge Plaintiff with disorderly conduct at the time of the arrest.

Finally, the Court notes that the burden is on Defendant to establish the defense of qualified immunity and he has failed to meet this burden.

As a result, Plaintiff has established that Defendant falsely arrested him in violation of 42 U.S.C. § 1983 and the Fourth Amendment.

### c.   Malicious Prosecution

To prove a malicious prosecution claim, a plaintiff must demonstrate "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Posr v. Court Officer Shield # 207*,

180 F.3d 409, 417 (2d Cir. 1999) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  Under § 1983, to prevail on a malicious prosecution claim, a plaintiff must also show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Authority*, 215 F.3d 208, 216 (2d Cir. 2000); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-117 (2d Cir. 1995) ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person . . . .  A plaintiff asserting a . . . malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'").

"Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (N.Y. 1978)).  "In most cases, the lack of probable cause—while not dispositive—'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" *Lowth*, 82 F.3d at 573 (quoting *Conkey v. State*, 427 N.Y.S.2d 330, 332 (N.Y. App. Div. 4th Dep't 1980)).  In addition, malice "may be manifested in an egregious deviation from proper investigative procedures." *Ramos v. City of New York*, 729 N.Y.S.2d 678, 691 (N.Y. App. Div. 1st Dep't 2001).  "Actual malice, in fact, is seldom shown by direct evidence of an ulterior motive, but is usually inferred from the facts and circumstances of the investigation." *Ramos*, 729 N.Y.S.2d at 691.

Here, there is little dispute that Defendant initiated a prosecution against Plaintiff (Exhibits P-10, P-12) and that the prosecution was terminated in Plaintiff's favor (Exhibit P-1).

Further, as set forth above in Part II. B.1.b. of this Memorandum Decision and Order, the Court finds that there was no probable cause to charge Plaintiff with obstructing governmental administration and resisting arrest.

However, Plaintiff has failed to establish by a preponderance of the evidence that Defendant acted with malice.  Instead, the testimony of Defendant, video evidence, and Plaintiff's own version of the events on June 1, 2019, paint a picture wherein Defendant "was confused about what to do and did not know how to handle the situation."  (Dkt. No. 64 at 11 [citing Dkt. No. 60 at 47]; *see also* Dkt. No. 60 at 51-52 [Defendant testifying that he was not aware at the time of the incident of certain Tompkins County policies].)  Hence, Plaintiff has failed to establish by a preponderance of the evidence that Defendant acted out malice, and not ineptitude.

To the extent that Plaintiff's malicious prosecution charge relates to "the commencement of a criminal proceeding against [Plaintiff] for disorderly conduct" (Dkt. No. 64 at 13-14) the Court similarly finds Defendant not liable.  "In general, courts presume the prosecutor exercises independent judgment in deciding whether to initiate or continue a criminal proceeding." *Ventillo v. Falco*, 19-CV-03664, 2020 WL 7496294, at *11 (S.D.N.Y. Dec. 18, 2020).  "Where the defendant in a malicious prosecution action is a police officer, courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457-58 (S.D.N.Y. 2009).  Here, the disorderly conduct charge was brought via prosecutor's information signed by Deputy District Attorney Andrew Bonavia.  (Exhibit P-8.)  Plaintiff has failed to present evidence to overcome

the presumption that the prosecutor exercised independent judgment in deciding whether to initiate the charge of disorderly conduct against Plaintiff.

As a result, the Court finds Defendant not liable for malicious prosecution.

## 2. Damages

Having found liability on Plaintiff's claims of excessive force and false arrest, the Court next turns to an appropriate calculation of damages.

Plaintiff submitted medical expenses totaling $557.71.  (Plaintiff's Exhibit P-40.)

Plaintiff testified regarding several physical injuries he sustained as a result of his interaction with Defendant.  (Dkt. No. 60 at 95-101 [discussing Exhibit P-25].)  More specifically, Plaintiff testified he sustained, *inter alia*, contusions on his knee, right leg, and elbow (*id*. at 95-96), a bruise on his lower back (*id*. at 97), and swelling in his right knee (*id*. at 98).  In addition, Plaintiff testified that to date he still has a scar on his wrist from the handcuffs. (*Id*. at 95, 107-08.)

Moreover, with respect to pain from the incident, Plaintiff testified that (1) when he was "pulled along" from his property to Defendant's patrol vehicle, it was painful to walk because his driveway is made of "coal sharp stones" and Plaintiff did not have any shoes on (Dkt. No. 60 at 99), (2) he felt "a lot of pain for a long time" in his back after the incident (*id.* at 97), and (3) for several months after the incident, he felt pain in his wrist while driving a bus (*id*. at 100-101).

Plaintiff testified that he suffered mental and emotional damages.  (*Id*. at 101-103.) Plaintiff testified that after the incident with Defendant, he lost enjoyment in the use of his property and continues to fear retaliation by the Tompkins County Sheriff's Department.  (Dkt. No. 60 at 101-02, 110-11.)

Plaintiff testified about the embarrassment and humiliation of the press release.  (*Id.* at 103-106 [discussing Exhibit P-39].)  Plaintiff testified that his friends saw the press release and asked him about the incident.  (*Id.* at 103.)  Plaintiff testified that his children's friend's parents questioned allowing their kids to come to Plaintiff's house after reading the press release and expressed concerns that Plaintiff was "some kind of crazy drunk."  (*Id.*)  Plaintiff testified that co-workers learned of his arrest because of the press release and made comments to the effect of "have a good weekend, Ron, keep out of the booze and keep Metallica off the radio, ha, ha, ha." (*Id.*)

Plaintiff testified that the incident occurred on the first night of a planned week vacation from work.  (Dkt. No. 60 at 86-87.)  Plaintiff testified that he took an additional one and one-half weeks off from work using sick time because of the injuries he sustained during the incident with Defendant.  (Dkt. No. 61 at 23.)

In other cases, plaintiffs have been awarded a range of damage awards for claims of excessive force and false arrest.  *See Franco v. Gunsalus*, 16-CV-0634, 2022 WL 93570, at *1 (N.D.N.Y. Jan. 10, 2022) (Scullin, J.) (the jury awarded the plaintiff $5,000 in compensatory damages after finding for the plaintiff on claims for excessive force, false arrest, and malicious prosecution); *Moore v. Keller*, 16-CV-1230, 2021 WL 5493022, at *1 (N.D.N.Y. Nov. 22, 2021) (Hurd, J.) ("a jury found that Officer Keller had falsely arrested Jalia and awarded her $30,000 in damages."); *Johnson v. Mauro*, 16-CV-0622, 2019 WL 5842765, at *1 (N.D.N.Y. Nov. 7, 2019) (Sannes, J.) (the jury awarded $25,000 in compensatory damages for excessive force); *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 194-95 (N.D.N.Y. 2019) (Hurd, J.) (holding that jury award of $1,130,000 to plaintiff Alonzo Grant for claims of, *inter alia*, false arrest and excessive

force, was not excessive).  In this case, the Court finds that $50,000 in compensatory damages is an appropriate award for Plaintiff's claims.

The Court finds that punitive damages are not appropriate here.  Punitive damages are appropriate "when the plaintiffs have produced evidence that the defendant's conduct is motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir. 2010) (internal quotation marks and alteration omitted).  This standard requires "evidence of a positive element of conscious wrongdoing or malice."  *Cameron*, 598 F.3d at 30 (internal quotation marks omitted).  Although the Court finds that Defendant used excessive force and did not have probable cause to arrest Plaintiff, "these findings do not establish [Defendant]'s *subjective* intent—which *Cameron* indicates is required."  *Franco v. Gunsalus*, 21-71, 22-339, 2023 WL 3590102, at *2 (2d Cir. May 23, 2023) (citing *Amid v. Chase*, 720 F. App'x 6, 13 (2d Cir. 2017) (describing the standard as subjective)).  "Neither an excessive use of force nor an unreasonable belief about probable cause necessarily entitles a Section 1983 plaintiff to punitive damages."  *Franco*, 2023 WL 3590102, at *2.

## IV.    PENDING TRIAL MOTIONS

During the trial, Plaintiff and Defendant made oral motions,[3] each requesting a finding of judgment in their favor.  (Text Minute Entry dated 04/24/2023.)  The Court reserved decision on those motions.  (*Id.*)  For the reasons stated herein, those motions are denied.

---

[3]      "Unlike under Rule 50 which governs judgment as a matter of law in jury trials, under Rule 52(c), the court does not consider the evidence in the light most favorable to the non-moving party."  *Wechsler v. Hunt Health Sys.*, Ltd., 330 F. Supp. 2d 383, 433 (S.D.N.Y. 2004).  The Court further "does not draw any special inferences in the non movant's favor, or consider the evidence in the light most favorable to the non-moving party.  Instead the court acts as both judge and jury, weighing the evidence, resolving any conflicts, and deciding where the

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff is entitled to judgment in his favor against Defendant on his Fourth Amendment excessive force and false arrest claims; and it is further

**ORDERED** that Defendant is entitled to judgment in his favor on Plaintiff's Fourth Amendment malicious prosecution claim; and it is further

**ORDERED** that Plaintiff is entitled to compensatory damages in the amount of $50,000 on his Fourth Amendment excessive force and false arrest claims against Defendant; and it is further

**ORDERED** that any motion to recover reasonable attorney's fees pursuant to 42 U.S.C. § 1988 shall be filed on or before April 30, 2024; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment.


Dated: March 12, 2024
         Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

preponderance lies." *LaMarca v. United States*, 31 F. Supp. 2d 110, 123-24 (E.D.N.Y. 1998) (citation omitted).